

FILED & ENTERED

AUG 01 2011

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** craig       **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

In re:

Raul Gonzalez,

                              Debtor.

)
)
)
)
)
)
)
)
)
)

Case No.: No. 6:11-bk-15665-MW

Chapter 7

**MEMORANDUM DECISION AND ORDER**

WALLACE, J.

      This matter comes before the Court on a motion by Rancho Horizon, LLC ("Rancho Horizon") for relief from the automatic stay on the ground of unlawful detainer. This is the second such motion brought by Rancho Horizon with respect to the same property, the first motion having been denied without prejudice on May 9, 2011.  For the reasons stated below, the Court denies the motion with prejudice.

## FACTUAL BACKGROUND

      Debtor Raul Gonzalez ("Gonzalez") is a co-owner of a residence at 2765 Brockton Avenue, Riverside, California (the "Property").  The Property was encumbered by

1  a deed of trust in favor of OneWest Bank FSB as beneficiary, with Quality Loan Service

2  Corp. ("Quality Loan Service") as trustee.

3          On November 15, 2010, Quality Loan Service recorded a Notice of Trustee's

4  Sale (the "Notice") indicating that the Property would be sold at the main entrance to the

5  Riverside County Courthouse on December 9, 2010 at 10:00 a.m.  Subsequently, the sale

6  was postponed to February 22, 2011 at 10:00 a.m.  At some point during the day of

7  February 22, Quality Loan Service accepted a bid by Rancho Horizon to purchase the

8  Property.  The record is unclear as to the precise time the final bid was accepted.  In its

9  initial motion for relief from the automatic stay, Rancho Horizon alleged by sworn

10  declaration that "[t]he non-judicial foreclosure sale took place at approximately 8:00 a.m. on

11  February 22, 2011."[1]  In the motion now before the Court, Rancho Horizon alleged in a

12  second sworn declaration that "[t]he property was in fact auctioned at 10:00 a.m. on

13  February 22, 2011."[2]  When the motion was heard on June 21, 2011, Rancho Horizon's

14  counsel represented to the Court that he had yet another declaration, this one by declarant

15  Sara Monell, stating the auction closed at 1:27 p.m.[3]  On the other hand, there is no doubt

16  or equivocation as to the precise time of Gonzalez's filing of his chapter 7 petition – 1:46

17  p.m. on February 22, 2011.  For his part, Gonzalez contends that as of 1:46 p.m. the

18  Property had not yet been sold.

19

20          On February 25, 2011 Quality Loan Service as grantor executed a Trustee's

21  Deed Upon Sale (the "Deed") in favor of Rancho Horizon as grantee whereby it conveyed a

22  fee simple estate in the Property to Rancho Horizon.  The record is devoid of any evidence

23

24

25

26  [1]  Supplemental Declaration of Robert A. Krasney on Behalf of Rancho Horizon, LLC For Annulment to
Automatic Stay (the "Krasney Declaration") at page 2, lines 12-13, filed April 15, 2011.

27  [2]  Supplemental Declaration of Barry Lee O'Connor For Annulment to the Automatic Stay and Validate
Trustee's Sale at page 4, lines 8-9, filed May 24, 2011.

28  [3]  The Declaration of Sara Monell was finally filed with the Court on June 29, 2011 and states on page 2, lines
15-16, that "the auction closed at 1:27 p.m. in the afternoon of February 22, 2011."

as to the date of delivery of the Deed or its acceptance by Rancho Horizon.  The Deed was recorded with the Riverside County Recorder on March 2, 2011.

Rancho Horizon filed a complaint against Gonzalez's co-owner (Mario Jimenez) for unlawful detainer of the Property on February 28, 2011.  Mario Jimenez filed a demurrer on March 7, 2011.  Rancho Horizon contends it had no notice of the filing of the Gonzalez chapter 7 petition at the time it filed the complaint.  Gonzalez disputes this point.

Rancho Horizon filed a motion for relief from stay on the basis of unlawful detainer on April 15, 2011.  The motion was heard on May 9, 2011 and was denied without prejudice principally on the ground that the Krasney Declaration (alleging that the sale occurred "at approximately 8:00 a.m.") lacked foundation.

The motion now before the Court was filed on May 24, 2011 and heard on June 21, 2011.  Rancho Horizon alleges that it is the owner of the Property and that the stay should be annulled because Gonzalez has no right to continued occupancy of the Property.  Rancho Horizon contends that relief from stay (including annulment) should be granted for cause under 11 U.S.C. § 362(d)(1) and under 11 U.S.C. § 362(d)(4) because the filing of Gonzalez's petition was part of a scheme to hinder, delay or[4] defraud creditors.

Also heard on June 21, 2011 was Gonzalez's motion for an order to set aside the foreclosure sale and to rescind the Deed.  The Court continued the hearing on that motion to September 27, 2011 and scheduled an evidentiary hearing for the same date with respect to the time of the acceptance of the final bid at the Property's nonjudicial foreclosure sale.

---

[4] Although Rancho Horizon uses the conjunction "or" – as in "hinder, delay or defraud creditors" – the statute uses the conjunction "and".  *See* 11 U.S.C. § 362(d)(4).

## DISCUSSION

Although there is a significant dispute between the parties as to the precise time of the trustee's acceptance of the final bid (and perhaps the only bid) at the nonjudicial foreclosure sale, it is not necessary to defer a ruling on Rancho Horizon's motion.  As discussed below, Rancho Horizon is not entitled to relief from the automatic stay on the basis of unlawful detainer even if the acceptance of the final bid by Quality Loan Service occurred prior to 1:46 p.m. on February 22, 2011.  Rancho Horizon fails to meet its burden of establishing a *prima facie* case because it has failed to demonstrate facts that would support relief from the stay under 11 U.S.C. §§ 362(d)(1) or (d)(4).

### A.   Postpetition Execution of the Deed

At common law in earlier ages, the ownership of real property was transferred by "livery of seisin", a ceremony in which the grantor (then called the "feoffor") traveled to the property to be conveyed and, in the presence of witnesses, declared the contents of the grant and delivered to the grantee a clod of earth or twig or bough.  2 William Blackstone, Commentaries *315.  Modern law, however, prescribes the use of written deeds to convey real property.  Section 1091 of the California Civil Code provides that an estate in real property (other than an estate at will or for a term not exceeding one year) can be transferred only by deed or by operation of law.

The execution, delivery and acceptance of a properly-drawn deed to real property are no mere formalities or ministerial acts.[5]  Rather, they are the essential acts by which ownership of, and title to, real property are transferred from one person to another.  A deed is not merely evidence of a grant but is the grant itself and operates to transfer title to

---

[5]  One California case has suggested that the execution of a deed is only a ministerial act.  *Ballengee v. Sadlier*, 179 Cal. App. 3d 1, 4-5 (Ct. App. 1986).  However, this case has been limited to its special facts and, in any event, is of questionable validity in view of its failure to discuss or even cite section 1091 of the California Civil Code.  *See Little v. CFS Serv. Corp.*, 188 Cal. App. 3d 1354, 1362 (Ct. App. 1987) ("We believe that *Ballengee* should be limited to its facts:  an unsuccessful attempt by a junior lienor to circumvent an antideficiency statute by arranging for his trustee to withhold execution and delivery of the deed to him after he had purchased at his own sale.").

the grantee.  *See* Cal. Civ. Code § 1091; *Hamilton v.* Hubbard, 134 Cal. 603, 605 (1901);

Drake *v. Martin*, 30 Cal. App. 4th 984, 994 (Ct. App. 1994).  Of critical importance here is

that there can be no transfer of title to, or ownership of, real property (including, of course,

the Property) unless and until a deed is executed in favor a grantee and such deed is

delivered to, and accepted by, such grantee, unless through a transfer by operation of law.

California law provides that the purchaser at a nonjudicial foreclosure sale

takes title by a trustee's deed, not by operation of law.  *Moeller v. Lien,* 25 Cal. App. 4th

822, 831 (Ct. App. 1994); *see Brown v. Copp,* 105 Cal. App. 2d 1, 6-7 (Ct. App. 1951)

(trustee's deed pursuant to sale under deed of trust conveys absolute legal title to the

purchaser).  California's nonjudicial foreclosure statutes (codified in California Civil Code

§§ 2924 – 2924k) specifically envision the issuance of a trustee's deed to the purchaser in

connection with a nonjudicial foreclosure sale and provide that certain recitals in such a

deed create a conclusive presumption in favor of a bona fide purchaser that the sale was in

compliance with relevant legal requirements.[6]

California's statutes regulate nonjudicial foreclosures, but the mere regulation

of a sale transaction does not turn the transaction into a transfer by the law's operation.  A

transfer by operation of law is to be contrasted with a transfer by operation of the parties to

the transfer.  A transfer by operation of law occurs when property is transferred pursuant to

the terms of a statute without any action required by any private party directly relating to the

transfer.  One example of a transfer by operation of law is the transfer of property from the

debtor to the bankruptcy estate pursuant to 11 U.S.C. § 541.  The mere commencement of

the bankruptcy case triggers the transfer, without the need for any transfer-related activity

by the debtor. [7] Another example is a merger of corporations under California law, where

---

[6]  *See, e.g.,* Cal. Civ. Code §§ 2924(c), 2924h, 2924j(a).
[7]  Note, for example, that no deed from the debtor to the bankruptcy estate's trustee is necessary to effectuate the transfer of a debtor's real property to the bankruptcy trustee.  This is in sharp contrast to the transfer of title that occurs in a nonjudicial foreclosure.  As indicated above, title in a nonjudicial foreclosure is transferred by a trustee's deed.  *Moeller,* 25 Cal. App. 4th at 831; *see Brown,* 105 Cal. App. 2d at 6.

the surviving corporation succeeds to all of the disappearing corporation's property "without other transfer". Cal. Corp. Code § 1107(a). In contrast, a transfer that occurs in connection with a nonjudicial foreclosure sale is utterly unlike transfers that occur in bankruptcy or through corporate merger because a transfer in a nonjudicial foreclosure requires private parties to send out notices, hold an auction, accept an offer from the highest bidder and then issue a trustee's deed to the purchaser. For the foregoing reasons, the Court concludes that a nonjudicial foreclosure is not a transfer by operation of law and that, consistent with the California cases and statutes cited above, a deed from the trustee is required to effectuate the transfer of the real property in a nonjudicial foreclosure.[8]

The deed required by California law to convey title to the Property to Rancho Horizon was executed postpetition on February 25, 2011 (there is no evidence as to the date the deed was delivered or accepted) and is void, *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 571 (9th Cir. 1992), unless (1) rescued from voidness by certain retroactive provisions set forth in section 2924h of the California Civil Code, (2) an exception to the automatic stay applies, or (3) grounds exist for annulling the stay and retroactively permitting the execution, delivery and acceptance of the Deed. *See* 11 U.S.C. § 362(a)(3); *Jewett v. Shabahangi (In re Jewett)*, 146 B.R. 250, 252 (B.A.P. 9th Cir. 1992). Accordingly, title to the Property did not pass to Rancho Horizon – unless this result is altered by the provisions of law referred to above.

### B.    California Civil Code Section 2924h

Section 2924h of the California Civil Code is a complex statute that governs bidding rules for the trustee's sale at a nonjudicial foreclosure. The statute contains a

---

[8]  A respected commentator has stated that a foreclosure is a transfer by operation of law. 3 Miller & Starr, California Real Estate § 8.1 (3d ed. 2000). However, the cases cited for this proposition base their decision on a California statute that has since been repealed – section 700 of the California Code of Civil Procedure. Section 700 specifically provided for the transfer of title to the purchaser at an execution sale: "Upon the sale the purchaser acquires all right, title, interest and claim of the debtor thereto." There is no counterpart to section 700 in the present law governing nonjudicial foreclosures.

provision – set forth in section 2924h(c) – that deems the trustee's sale to be "final" upon

the acceptance of the last and highest bid, and deemed perfected as of 8 a.m. on the actual

date of the sale if the trustee's deed is recorded within 15 calendar days of the sale.  One

court has relied on this provision to hold that the postpetition issuance of a deed does not

violate the automatic stay because the recordation of the deed within 15 days of the sale

causes the sale to relate back to 8 a.m. on the sale date, thereby preceding the filing of a

bankruptcy petition (and, as a corollary, the imposition of the automatic stay).  *In re Garner*,

208 B.R. 698 (Bankr. N.D. Cal. 1997).[9]  For the reasons stated below, this Court

respectfully disagrees with *Garner* and holds that section 2924h does not validate the

postpetition execution of a trustee's deed.

A brief review of section 2924h may be helpful in resolving the issue.  Section

2924h(a) provides that each and every bid made at a nonjudicial foreclosure is deemed to

be an irrevocable offer.  Each subsequent bid cancels the previous bid (and offer).  Section

2924h(b)(1) gives the trustee the right to require bidders to prove they can actually pay the

amount they are bidding.  Section 2924h(b)(2) gives the trustee the right to require a

deposit from the last and highest bidder "immediately prior to the completion of the sale, *the

completion of the sale being so announced by the fall of the hammer or in another

customary manner*"  (emphasis added).  Section 2924h(c) provides that in the event the

trustee accepts a check drawn by a credit union or savings and loan association or a cash

equivalent designated in the notice of sale, " . . . the trustee may withhold the issuance of

the trustee's deed . . ." pending the time when the funds used to make the purchase

become available to the payee as a matter of right.  Section 2924h(c) goes on to provide

that "[f]or the purposes of this subdivision, the trustee's sale shall be deemed final upon the

---

[9]  *See also*, *Hamilton v. Hernandez (In re Hamilton)*, No. CC-04-1434-MaTK, 2005 Bankr. LEXIS 3427 (B.A.P. 9th Cir. August 1, 2005) (not for publication and of no precedential value).  *Cf. Bebensee-Wong v. Fed. Nat'l Mortgage Assoc.,* 248 B.R. 820 (B.A.P. 9th Cir. 2000) (highest bid accepted prepetition and deed recorded postpetition, but no indication as to whether deed was executed, delivered and accepted prepetition or postpetition).

acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the

actual date of sale if the trustee's deed is recorded within 15 calendar days after the

sale . . . ." An automatic rescission of the "sale" occurs under section 2924h(c) if there is a

failure of consideration in the event funds are not available for withdrawal.  Section

2924h(d) provides that if the trustee has not required a deposit pursuant to subdivision

(b)(2) of section 2924h, "the trustee shall complete the sale.  If the last and highest bidder

then fails to deliver to the trustee, when demanded, the amount of his or her final bid in

cash [or other specified forms of consideration] . . . , that bidder shall be liable to the trustee

for all damages . . . ."

A sale transaction generally is comprised of two parts:  an agreement for sale

and a closing of the sale transaction.  In everyday commerce these two parts sometimes

occur simultaneously, such as when an individual purchases a newspaper at a newsstand

by first taking a newspaper out of the rack and then handing the exact change to the

vendor.  In other instances there is only a very brief interval between the two, such as when

the cashier rings up the sale (the agreement for sale) and, moments later, accepts cash

from the purchaser and hands the purchaser a receipt (the closing of the sale).

In real estate transactions, where much larger sums of money and more

valuable property change hands, the agreement for sale and the closing of the sale are

usually distinctly different events.  Typically, an escrow is opened after an agreement for

sale is signed.  The seller deposits a grant deed and the buyer deposits the purchase price.

At the closing, which often occurs weeks after the escrow opened, the escrow officer issues

the deed to the buyer and transmits the purchase price (net of fees and costs) to the seller.

Legal title to the purchased property does not transfer to the buyer at the time of the

agreement for sale but rather at the closing.

Section 2924h uses the word "sale" in a number of places, and it may be

asked whether, in these contexts, "sale" means (1) only the agreement for sale, (2) both

agreement for sale and closing of the sale, or (3) only the closing of the sale. Close

examination of section 2924h indicates that the statute is using the term to mean only the

agreement for sale as opposed to the other meanings. As discussed above, section

2924h(d) addresses a situation where the trustee has not required a deposit of the funds.

Subdivision (d) permits the trustee to "complete the sale":

> (d)  If the trustee has not required the last and highest bidder to
>
> deposit the cash, a cashier's check drawn on a state or national
>
> bank [or other specified forms of consideration] . . . *the trustee shall*
>
> *complete the sale*. If the last and highest bidder *then* fails to deliver
>
> to the trustee, when demanded, the amount of his or her final bid in
>
> cash, a cashier's check drawn on a state or national bank [or other
>
> specified forms of consideration] . . . that bidder shall be liable to
>
> the trustee for all damages which the trustee may sustain by the
>
> refusal to deliver to the trustee the amount of the final bid . . . ."
>
> (emphases added)

If "sale" in the context of section 2924h(d) means the closing of the sale (or

both the agreement for sale and the closing of the sale), by its very definition the closing of

the sale would entail the payment of the purchase price by the buyer. Section 2924h(d)

then would be contradicting itself by referring to a situation in which, following the

completion of the sale, "the last and highest bidder then fails to deliver to the trustee . . . the

amount of his or her final bid in cash . . . ."  In other words, a sale cannot be considered

closed if the buyer has not yet paid the purchase price, and therefore the reference in

section 2924h(d) to a "sale" (i.e., "the trustee shall complete the sale") must mean

something other than the closing of the sale. The logical inference is that "sale" is being

used to denote the agreement for sale, not the closing of the sale and not both the

agreement for sale and the closing of the sale. Interpreted in this fashion, section 2924h(d)

authorizes the trustee to complete the agreement for sale even if the buyer has not made a

deposit of cash or other specified forms of consideration.  In the event the buyer "then fails

to deliver to the trustee, when demanded, the amount of his or her final bid in cash . . .", the

transaction does not close at all, and the would-be buyer is liable to the trustee for

damages.

Section 2924h(b)(2), which states that the completion of the sale is

announced "by the fall of the hammer or in another customary manner", provides additional

support for this interpretation.  One would not expect the trustee to simultaneously hand the

buyer the trustee's deed at the moment the hammer falls (if for no other reason than a grant

deed must name the grantee, and the grantee's name may not become known until the very

moment the hammer falls and, after all, it does take some time to prepare the deed).  A

more sensible interpretation is that the fall of the hammer marks an offer and an acceptance

– an agreement for sale – whose only conditions to closing are the delivery of the deed to

the buyer and the receipt of the purchase price funds by the trustee or other payee as a

matter of right.

The provision for "automatic rescission" of the "sale" in section 2924h(c)

creates no inference that the statute is using "sale" to mean "closing of the sale" because it

is clear under California law that rescission can occur with respect to an executory contract.

*Engle v. Farrell*, 75 Cal. App. 2d 612, 617-18 (Ct. App. 1946) (holding that section 1689 of

the California Civil Code, which provides for rescission, makes no distinction between

executory and executed contracts).  Thus, the automatic rescission of the "sale" appears to

refer to the automatic rescission of the agreement for sale that occurred when the trustee's

hammer fell, marking an acceptance of the final bid.

What then of the "deemed final" language in section 2924h(c)?  Until the

trustee's deed is delivered the successful bidder is out on a limb:  he has tendered a check,

the trustee has accepted the check, but the bidder does not yet have the deed because the

trustee has chosen to withhold it until the check used to purchase the property clears.[10] Suppose during this interval the trustee gets a higher bid from someone else.  Can the trustee then change his mind and sell to the new, higher bidder?  Section 2924h makes it clear he cannot, *because the agreement for sale is deemed final*.  The finality of the sale prevents the trustee from continuing the sale after the hammer falls with the objective of getting a higher bid from someone else.

Consequently, the "deemed final" provision of section 2924h does not alter the rule of section 1091 of the California Civil Code that ownership of, and title to, real estate passes by deed.  At the time the petition was filed on February 22, 2011 – even presuming Quality Loan Service's sale was final – Gonzalez still held the title[11] to the Property (and was in possession thereof).  Quality Loan Service's execution of the Deed on February 25, 2011 violated the automatic stay, and the Deed is therefore void.  *In re Schwartz,* 954 F.2d at 571.

There remains the provision of section 2924h(c) that deems the "sale" to be perfected as of 8 a.m. on the actual date of the sale if the trustee's deed is recorded within 15 calendar days after the sale.  This provision is not operative in this case.  Because the Deed was executed postpetition it is void (see discussion above) and because it is void the recording of a void deed is itself a void act and neither creates nor perfects title.  California courts have consistently held that no title is created by a void deed even if the void deed is recorded.  *Bryce v. O'Brien,* 5 Cal. 2d 615, 616 (1936) ("An instrument wholly void, such as a deed in blank, cannot be made the foundation of a good title, even under the equitable doctrine of *bona fide* purchaser."); *Trout v. Taylor*, 220 Cal. 652, 655-56  (1934).[12]  Thus,

---

[10]   The authority to withhold the deed in this situation appears in section 2924h(c).
[11]   *Davisson v. Engles (In re Engles)*, 193 B.R. 23, 25 (Bankr. S.D. Cal. 1996) ("Until the deed from a prepetition foreclosure sale is recorded, a debtor retains legal title to the property.").
[12]   The legislative history accompanying the amendment of section 2924h to provide for relation-back perfection indicates there was a concern about the validity of foreclosure sales where a bankruptcy petition was filed after the trustee's sale became final but before the deed could be recorded.  The legislative history does not elucidate how the timing of the execution, delivery and acceptance of the deed fits into this analysis

because no valid deed was recorded within 15 days of the date of the sale (the Deed being void), the relation-back rule does not apply.

### C.    Exception to the Automatic Stay

11 U.S.C. § 362(b)(24) provides that the automatic stay does not apply to any transfer that is not avoidable under 11 U.S.C. § 544 <u>and</u> that is not avoidable under 11 U.S.C. § 549.  Rancho Horizon contends that even if the nonjudicial foreclosure sale of the Property occurred after the petition was filed, the transfer is nevertheless not avoidable under section 549.  For this proposition Rancho Horizon relies upon and cites section 549(c).[13]

Section 549(c) prohibits the avoidance of a transfer of an interest in real property to a "good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value . . . ."  The term "present fair equivalent value" is not defined in section 549(c).  The Bankruptcy Appellate Panel of the Ninth Circuit has held that "present fair equivalent value" is a more stringent standard than "reasonably equivalent value."  *Shaw v. Cnty. of San Bernardino (In re Shaw),* 157 B.R. 151, 153-54 (B.A.P. 9th Cir. 1993).  In *Shaw,* it was held that property having a proven fair market value of $76,000 that was sold at a tax sale for $36,049 was not sold for "present fair equivalent value."

In this case, although Rancho Horizon presented evidence that it paid $167,000 for the Property, it has presented no evidence whatsoever concerning the

---

nor disclose any intention to legislatively overrule court rulings that the recordation of a void deed neither creates nor perfects title.  In any event, as long as a trustee's deed is executed, delivered and accepted prepetition, relation-back perfection of a deed recorded after the petition date (or time) would occur under section 2924h(c).

[13]  To prevail under 11 U.S.C. § 362(b)(24), Rancho Horizon must show that the transfer is not avoidable under 11 U.S.C. § 544 and is not avoidable under 11 U.S.C. § 549.  Rancho Horizon's arguments in the motion address only section 549 and omit any discussion of section 544.  The Court does not reach Rancho Horizon's failure to address section 544 because of its failure to make out a prima facie case under section 549.

Property's fair market value or its present fair equivalent value.[14]  As *Shaw* makes clear, a

forced sale of real property at an auction does not necessarily and in all cases yield a sale

at fair market value.  Under Rule 6001 of the Federal Rules of Bankruptcy Procedure,

Rancho Horizon has the burden of proof in this matter.  *In re Major,* 218 B.R. 501, 504

(Bankr. W.D. Mo. 1998).  Rancho Horizon has not carried its burden of proof (nor, for that

matter, has it carried its burden to make out a *prima facie* case)[15] and therefore its

argument under section 549 fails.[16]

### D.    Relief From the Stay

### 1.    11 U.S.C. § 362(d)(1)

Rancho Horizon contends that cause exists to lift the automatic stay because,

as of the petition date, Gonzalez had no right[17] to continued occupancy of the premises.

Rancho Horizon further alleges that it acquired title to the Property prepetition and recorded

the Deed within the requisite period.[18]

However, as discussed above, Rancho Horizon did *not* acquire legal title,

either prepetition or on or after the petition date.  Moreover, Gonzalez remains in

possession of the Property.

Rancho Horizon's failure to acquire title precludes it from obtaining relief

under California's unlawful detainer laws.  Section 1161a of the California Code of Civil

---

[14]  Exhibit "D" to Rancho Horizon's motion is a "Foreclosure Profile Report" by Foreclosure Radar.  This document contains a line item showing the Property's value to be $242,242.  It is far from clear this is admissible evidence of fair market value (and the Court makes no ruling on its admissibility).

[15]  11 U.S.C. § 362(g)(1); *see Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.),* 311 B.R. 551, 557 & n.11 (Bankr. C.D. Cal. 2004).

[16]  Note that the same analysis applies if the final bid was accepted before, rather than after, the filing of the petition.  Irrespective of the timing of the acceptance of the final bid, the execution, delivery and acceptance of the Deed are all postpetition transactions.

[17]  As a technical matter, the right to occupancy of the Property resides in Gonzalez's bankruptcy estate, not Gonzalez.  The right to possession of the Property passed to Gonzalez's bankruptcy estate upon the commencement of the case.  11 U.S.C. § 541(a)(1).  Because this distinction generally is not germane to the issues before the Court, "Gonzalez" will be used to refer to "Gonzalez's bankruptcy estate" where the context so requires.

[18]  Notice of Motion and Motion For Relief From the Automatic Stay or For Order Confirming That the Automatic Stay Does Not Apply Under 11 U.S.C. § 362(l) (with supporting declarations) by Movant Rancho Horizon, LLC at 3 (filed May 24, 2011).

Procedure allows a purchaser at a nonjudicial foreclosure sale to commence an unlawful

detainer action against a holdover trustor-former owner, but only if "title under the sale has

been duly perfected." Cal. Civ. P. § 1161a(b)(3); *Higgins v. Coyne*, 75 Cal. App. 2d 69, 72-

73 (Ct. App. 1946).  Consequently, Rancho Horizon, having failed to acquire title or to

perfect title, cannot satisfy applicable requirements of California law for maintaining an

unlawful detainer action against Gonzalez.  This essential fact militates against a finding

that cause exists to lift the stay to permit Rancho Horizon to initiate or continue an unlawful

detainer action.

　　　　By the same token, Gonzalez, being in possession of the Property, has a

protected right under California law to remain in possession.[19]  California's forcible entry

and detainer laws protect Gonzalez's right to peaceful and undisturbed possession of the

Property.  Cal. Civ. P. Code §§ 1159-1179a.

　　　　If Rancho Horizon did not acquire legal title to the Property, did it acquire

equitable title?  Under the doctrine of equitable conversion, a buyer under an agreement for

the sale of real property acquires equitable title at the time of the agreement's execution.

*Estate of Dwyer*, 159 Cal. 664, 675 (1911); *Estate of Reid*, 26 Cal. App. 2d 362, 367-68 (Ct.

App. 1938).  However, equitable conversion presupposes the existence of a written

agreement for the sale of real property that satisfies the requirements of section 1971 of the

California Code of Civil Procedure.  Section 1971 provides as follows:

### § 1971   Grant of Interest or Estate in Land

> No estate or interest in real property, other than for leases for a term
>
> not exceeding one year, nor any power over or concerning it, or in
>
> any manner relating thereto, can be created, granted, assigned,

---

[19]  Note in this context that it would not be correct to state that Gonzalez only has "bare legal title" to the Property.  On the contrary, Gonzalez has both legal title *and* possession. This is not a mere quibble.  The law has long protected possession, and the right to remain in possession of property is an important right independent of actual title.  2 Frederick Pollock & Frederic Maitland, *History of English Law* 29-80 (2d ed. 1899).

1                   surrendered, or declared, otherwise than by operation of law, or a

2                   conveyance or other instrument in writing, subscribed by the party

3                   creating, granting, assigning, surrendering, or declaring the same,

4                   or by the party's lawful agent thereunto authorized by writing.

In the absence of an agreement satisfying section 1971, the plain language of section 1971 cuts off a buyer's acquisition of equitable title.[20]

Rancho Horizon has offered no evidence as to any written agreement (other than the Deed itself) creating, granting or assigning any interest (legal or equitable) in the Property that satisfies the requirements of section 1971 of the California Code of Civil Procedure (or, for that matter, section 1091 of the California Civil Code) and therefore cannot rely upon the doctrine of equitable conversion to establish an equitable interest in the Property.

To summarize, Rancho Horizon has neither legal nor equitable title to the Property.  It seeks relief from the automatic stay to commence an unlawful detainer proceeding against Gonzalez but, lacking legal title, could not prevail in such an action under California law if it were brought (as the analysis above indicates).  As between Gonzalez and Rancho Horizon, Gonzalez has the right to possess the Property and Rancho Horizon has no such right at this time.  If Rancho Horizon were to oust Gonzalez from possession, Gonzalez would have the right under California law to the assistance of the California courts in ousting Rancho Horizon and restoring his possession.

For the foregoing reasons, "cause" does not exist such as would warrant granting relief from the stay under section 362(d)(1).

---

[20]  Although part performance can take an unwritten contract for the sale of land out of the statute of frauds, payment of the whole of the purchase price, even if it occurred here, is not sufficient part performance. *Woerner v. Woerner*, 171 Cal. 298, 300-01 (1915); 1 Witkin, Summary of California Law § 404 (10th ed. 2005).

## 2.   11 U.S.C. § 362(d)(4)

Rancho Horizon also seeks relief from the automatic stay under section 362(d)(4), contending that the Court should find that the filing of Gonzalez's petition was part of a scheme to hinder, delay or [and][21] defraud creditors that involved the transfer of all or part ownership in the Property without the consent of the secured creditor or court approval.  In support of this aspect of its motion, Rancho Horizon asserts that Gonzalez's co-owner of the Property, Mario Jimenez, filed a chapter 7 petition in bankruptcy case number 6:10-bk-24074-CB on May 10, 2010 and that relief from stay was granted in connection with this proceeding.  (According to Rancho Horizon, Jimenez received a discharge on August 26, 2010, a fact that is confirmed by the Court's records).  Also noteworthy is evidence that Jimenez recorded a Quitclaim Deed on April 26, 2010, conveying the Property to himself and Gonzalez.  Furthermore, Jimenez and Gonzalez conveyed the Property to themselves and Soledad G. Espinoza and Maria de Jesus Gonzalez on February 24, 2011 in what would appear on its face to be an unauthorized postpetition transaction.

The ambit of section 362(d)(4) was previously addressed by this Court in *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27 (Bankr. C.D. Cal. 2006).  In that case, the Court held that relief under section 362(d)(4)(A) is predicated upon a showing of the following seven elements:  (1) the movant holds a security interest in the real property at issue; (2) the filing of the petition was part of a scheme; (3) one purpose of the scheme was to hinder creditors; (4) a second purpose of the scheme was to delay creditors; (5) a third purpose of the plan was to defraud creditors;  (6) the scheme involved a transfer of all or part ownership in real property without consent of the secured creditor or court approval; (7) the creditor had a right to consent to the transfer (without court approval).  *Id.* at 31-32.

---

[21]   *See* footnote 4, *supra.*

By parallel reasoning, relief under section 362(d)(4)(B) would require a showing of elements (1) through (5) above and a sixth element, namely, that there were multiple bankruptcy filings affecting the subject real property.

Rancho Horizon arguably has demonstrated that there have occurred multiple[22] bankruptcy filings with respect to the Property.

Rancho Horizon fails to satisfy the first element because it has neither legal title nor equitable title to the Property nor any interest in the Property as a secured creditor.

The fifth element of the analysis under both section 362(d)(4)(A) and section 362(d)(4)(B) requires the movant to make out at least a prima facie case that a purpose of the scheme was to defraud creditors.  As this Court pointed out in *Duncan & Forbes Development*, a scheme to defraud differs from a scheme to hinder and delay.  A scheme to defraud creditors requires an intent to defraud, "an intent not to pay them at all."  368 B.R. at 36; *see In re Poissant*, 405 B.R. 267, 273-74 (Bankr. N.D. Ohio 2009).

Rancho Horizon has failed to present any evidence that Gonzalez or Jimenez had an intent not to pay their creditors.  The fact that two bankruptcy filings have occurred with respect to the Property and that an interest in the Property has been conveyed twice within a one-year time span perhaps is evidence of an intent to hinder or delay creditors but does not support the conclusion that these transactions are part of a scheme to defraud creditors.  As in *Duncan & Forbes Development*, the secured creditor who was the beneficiary under the deed of trust on the Property (i.e., OneWestBank FSB) was required to deal with Jimenez's and Gonzalez's bankruptcy cases but fully retained its right to be paid from its collateral.  Like OneWestBank FSB, Rancho Horizon is required to deal with Gonzalez's bankruptcy proceeding, but that does not mean that Rancho Horizon has been

---

[22]  The word "multiple" is defined in Webster's Ninth New Collegiate Dictionary as "something in units of more than one or two."  The bankruptcy filings affecting the Property have been in more than units of one (i.e., there have been two bankruptcy filings affecting the Property) but not more than units of two.  The Court assumes without deciding that two bankruptcy filings with respect to the Property satisfies the requirement of the statute that "multiple" bankruptcy filings have occurred.

defrauded.  In short, there is simply no evidence that any creditor has been defrauded or that there was an intent to defraud any creditor.

Because Rancho Horizon has failed to make a prima facie showing of the first and fifth elements under *Duncan & Forbes Development,* the Court concludes that Rancho Horizon is not entitled to relief from stay under section 362(d)(4).

### E.    Annulment of the Stay

Rancho Horizon seeks annulment of the stay.  If granted, such relief would be retroactive in nature.  *Lone Star Security & Video Inc. v. Gurrola (In re Gurrola),* 328 B.R. 158, 172 (B.A.P. 9th Cir. 2005).  Generally, annulment of the stay is the exception rather than the rule, and should be granted only in unique and compelling circumstances[23] since the violator is essentially asking the court to exercise its equitable powers and balance the equities between the parties.  *Shaw v. Ehrlich*, 294 B.R. 260, 272  (W.D. Va. 2003), *aff'd sub. nom. Wiencko v. Erlich (In re Wiencko),* 99 Fed. App'x 466 (4th Cir. 2004); *First Am. Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999), *aff'd*, 1 Fed. App'x 599 (8th Cir. 2001).  In balancing the equities, the significance of the automatic stay weighs heavily against the party seeking annulment.  *Moore v. U.S. Dept. of Hous. & Urban Dev. (In re Moore),* 350 B.R. 650, 655 (Bankr. W.D. Va. 2006).  A valid factor upon which a bankruptcy court may rely in deciding whether to grant annulment is whether relief from stay would have been granted if the movant had applied for such relief prior to the time of performing the acts that violated the stay.  *Nat'l. Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.),* 129 F.3d 1052, 1056 (9th Cir. 1997); *In re Kissinger*, 72 F.3d at 109.

Under these standards Rancho Horizon's request for annulment fails.  If Rancho Horizon hypothetically had moved for relief from the automatic stay within minutes

---

[23]  The United States Court of Appeals for the Ninth Circuit has determined that retroactive annulment should be granted only in extreme circumstances. *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995).

or seconds after Gonzalez filed his bankruptcy petition, relief from stay would have been

denied for all the reasons set forth in this Memorandum Decision and Order.  The Court

would not have permitted Quality Loan Service to issue the Deed to Rancho Horizon nor

would the Court have permitted Rancho Horizon to record the Deed.  Annulment probably

*would be* warranted if, prior to the filing of the bankruptcy petition, Quality Loan Service had

executed and delivered the Deed to Rancho Horizon and Rancho Horizon had accepted the

Deed.  However, those are not the facts in this case.

 The request for annulment also fails here because of Rancho Horizon's

subsequent conduct in moving for relief in this Court.  Rancho Horizon has played fast and

loose with the facts in a series of declarations, each of which was executed under penalty of

perjury.  Knowing full well the importance of the precise timing of the acceptance of the final

bid, Rancho Horizon first filed a declaration asserting that the sale occurred at

"approximately 8:00 a.m." on February 22, 2011.  This declaration was filed on April 15,

2011.  Next, Rancho Horizon filed a declaration stating that "[t]he property was *in fact*

auctioned at 10:00 a.m. on February 22, 2011" (emphasis added).  This declaration was

filed on May 24, 2011.  Finally, on June 29, 2011, Rancho Horizon filed the Declaration of

Sara Monell, stating that "the auction closed at 1:27 p.m. in the afternoon of February 22,

2011."  Whether what transpired in this case was the knowing and intentional use of false

declarations or merely a disregard for candor and the truth during the preparation and filing

of declarations is not an issue the Court need determine at this time.  Suffice it to say that a

party who seeks annulment has a duty of candor to the court and a corollary duty to

investigate the truth of statements prior to including them in a sworn declaration.  *Cf*. Fed.

R. Bankr. P. 9011(b).  It is a longstanding maxim of equity that "one who comes into equity

must come with clean hands."  Equity generally required a connection between the subject

matter in controversy and the party's wrongdoing.  Such a connection is present here.  A

party who seeks annulment to validate postpetition actions and does so through the use of

declarations that are either knowingly and intentionally false or made with a disregard for candor and the truth is not entitled to such relief.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Rancho Horizon's motion for relief from the automatic stay is denied with prejudice.

# # #

DATED: August 1, 2011

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)  Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION AND ORDER** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **August 1, 2011**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Helen R. Frazer (TR)    hfrazer@aalrr.com, mbuenaventura@aalrr.com;hfrazer@ecf.epiqsystems.com,C112@ecfcbis.com
- James Hogan    customer.service.bk@americredit.com
- Robert A Krasney    rkrasney@krasneylaw.net
- Barry L O'Connor    udlawBK@aol.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Darlene C Vigil    cdcaecf@bdfgroup.com

☐  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Raul Gonzalez
2765 Brockton Ave
Riverside, CA 92501

☐  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                    **F 9021-1.1.NOTICE.ENTERED.ORDER**